UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MICHELE L. ROSIC, | ) | CASE NO. 1:09CV1380 |
| | ) | |
| Plaintiff, | ) | MAGISTRATE JUDGE |
| | ) | GEORGE J. LIMBERT |
| v. | ) | |
| | ) | |
| COMMISSIONER OF | ) | **MEMORANDUM OPINION** |
| SOCIAL SECURITY, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

Michele L. Rosic ("Plaintiff") seeks judicial review of the final decision of Michael J. Astrue ("Defendant"), Commissioner of the Social Security Administration ("SSA"), denying her application for Disability Insurance Benefits ("DIB"). ECF Dkt. #1. For the following reasons, the undersigned AFFIRMS the Commissioner's decision:

I.   **PROCEDURAL AND FACTUAL HISTORY**

On May 7, 2006 and January 28, 2007, Plaintiff filed applications for DIB.[1]  Tr. at 108-122. Plaintiff's application was denied initially and on reconsideration.  Tr. at 93-94.

On December 19, 2007, Plaintiff filed a request for an administrative hearing.  Tr. at 102. On November 17, 2008, an ALJ conducted an administrative hearing where Plaintiff was represented by counsel.  *Id*. at 19-72.  At the hearing, the ALJ heard testimony from Plaintiff and Ted Macy, a vocational expert.  *Id*.  On January 30, 2009, the ALJ issued a Notice of Decision - Unfavorable. *Id*. at 8-18.  Plaintiff filed a request for review, which the Appeals Council denied.  *Id*. at 1-6.

On June 17, 2009, Plaintiff filed the instant suit seeking review of the ALJ's decision.  ECF Dkt. #1.  On October 30, 2009, Plaintiff filed a brief on the merits.  ECF Dkt. #15.  On January 27, 2010, Defendant filed a brief on the merits.  ECF Dkt. #18.  Plaintiff has not filed a reply.  *See* ECF Docket.

---

[1]   Defendant states that Plaintiff also applied for Supplemental Security Income, but does not cite a page in the record where that application is located.  ECF Dkt. #18 at 1.

## II. SUMMARY OF RELEVANT PORTIONS OF THE ALJ'S DECISION

The ALJ found that Plaintiff had the following severe impairments: degenerative disc disease; fibromyalgia; bipolar disorder; and anxiety disorder. Tr. at 13. The ALJ determined that Plaintiff did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listings"). Tr. at 14. The ALJ specifically considered Listings 1.04, 12.04, 12.06, and 12.08. The ALJ next determined that Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. 404.1567(b), except that she is limited to occasional climbing, no ladders, ropes, or scaffolds, and only occasional stooping and balancing; with the ability to understand, remember, and carry out simple instructions; limited to occasional interaction with co-workers and supervisors. Tr. at 14. The ALJ determined that Plaintiff could not perform her past relevant work, but jobs existed in significant numbers in the national economy that Plaintiff could perform. Tr. at 17-18. The ALJ therefore concluded that Plaintiff was not disabled. *Id*. at 18.

## III. STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to disability insurance benefits. These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see 20 C.F.R. § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

### IV. STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by § 205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990). The Court cannot reverse the decision of an ALJ, even if substantial evidence exists in the record that would have supported an opposite conclusion, so long as substantial evidence supports the ALJ's conclusion. *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 528 (6th Cir.1997). Substantial evidence is more than a scintilla of evidence, but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is evidence that a reasonable mind would accept as adequate to support the challenged conclusion. *Id.*; *Walters,* 127 F.3d at 532. Substantiality is based upon the record taken as a whole. *Houston v. Sec'y of Health and Human Servs.*, 736 F.2d 365 (6th Cir. 1984).

### V. ANALYSIS

Plaintiff asserts several assignments of error, but for the most part applies the incorrect standard by arguing that substantial evidence supports a finding of disability. *See* ECF Dkt. #18. Plaintiff sets forth an extensive argument as to why she believes she meets various listings, but does not attempt to demonstrate an error with the ALJ's decision in this regard. *See id*. at 3-17. The Court reiterates that the scope of review is limited to determining whether substantial evidence supports *the findings of the Commissioner* and whether the Commissioner applied the correct legal standards; the Court cannot reverse the decision of an ALJ, even if substantial evidence exists in the record that would have supported an opposite conclusion. *Abbott*, 905 F.2d at 922 (emphasis added); *Walters,* 127 F.3d at 528. Therefore, Plaintiff's extensive arguments that substantial evidence

-3-

supports various findings are not compelling and are for the most part improper.

Nevertheless, the Court considers the following issues touched upon in Plaintiff's brief:

### A. Whether Plaintiff meets a listed impairment

Plaintiff contends that she meets various listed impairments. ECF Dkt. #13 at 3-17.

The Court first notes that an ALJ is not required to individually discuss each element of the record in considering listings, so long as he demonstrates that he has considered the totality of the record. *Gooch v. Secretary of Health & Human Services*, 833 F.2d 589, 591 (6th Cir. 1987). As in *Gooch*, the ALJ in this case stated that he gave "careful consideration of the entire record." Tr. at 14; *see also Gooch*, 833 F.2d at 591. The ALJ went on to discuss specific evidence of record.

The ALJ first considered Plaintiff's spinal impairment. He noted that an MRI taken in 2002 showed L5-S1 arthrodesis and disk bulging. Tr. at 14. On February 12, 2004, Plaintiff complained of back pain and spasms and was prescribed Vicodin and Paxil *Id*. In September 2005, Dr. Krishnan evaluated Plaintiff for low back pain and left lower extremity pain. *Id*. The ALJ noted that Dr. Krishan diagnosed lumbar sprain/strain. *Id*. The ALJ noted that in January 2007, Plaintiff used medications including lopressor, HCT 2, Flexeril, diclofenac, soma, and lodine. *Id*. In February 2007, her medications included soma and ultram and her problem list included lumbar raduculitis, hypertension, and arthritis. *Id*. The ALJ noted that on February 19, 2007, Plaintiff stated that soma and lodine were not helping any more and she described her pain as constant, sharp, and stabbing. *Id*. In March 2007, she reported a decrease of back pain and in September 2007, she complained of aching in her lower legs. *Id*. The ALJ noted that Plaintiff was active with tennis and walking, and her hypertension was controlled. *Id*. He noted that an MRI from March of 2008 documented no evidence of acute compression fracture, but did show degenerative disc disease. *Id*.

The ALJ noted that Plaintiff testified at the administrative hearing that she had pain in her lower back, which was relatively intense and constant. Tr. at 15. The ALJ noted Plaintiff's claim that she experienced the pain on a daily basis and all day long, and that it was aggravated when she lifted anything heavy. *Id*. He noted her claim that she could not stand or walk for very long but could sit for about an hour at a time. *Id*.

The ALJ noted that, despite Plaintiff's impairments, she engaged in a number of activities

that were inconsistent with her allegations. Tr. at 16. He noted that she applied for and accepted jobs, including work as a salesperson and as a bartender. *Id*. He noted that she handled the physical demands of the jobs even though her back pain was constant and her bartending job involved significant standing and walking. *Id*. He also noted that Plaintiff claimed disability since 2003, but only stopped playing tennis in 2007, and offered the explanation that she had lied to her therapist about playing tennis. *Id*. Finally, the ALJ noted that the medical evidence showed "minimal" bulging and "early" degenerative changes. *Id*.

> Listing 1.04 requires that the claimant exhibit a:
>> Disorder [ ] of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), **resulting in compromise of a nerve root (including the cauda equina) or the spinal cord**. . . .

Listing 1.04 (emphasis added). Additionally, a claimant must meet one of three additional criteria. Here, Plaintiff claims that she meets part C of the listing, but has presented no evidence showing that her nerve root or spinal cord has been compromised. *See* ECF Dkt. #13 at 16-17. Therefore, the Court finds that Plaintiff has failed to demonstrate an error in the ALJ's finding related to Listing 1.04.

The ALJ next considered Plaintiff's mental impairments. Tr. at 15. He noted that she was hospitalized at Laurelwood Hospital from July 3, 2005 to July 7, 2005 and received discharge diagnoses of recurrent depression without psychotic features; borderline personality disorder; L4-5 disk herniation; osteoarthritis; and chronic pain. *Id*. He noted that in August 2005, she was diagnosed with depression not otherwise specified; anxiety not otherwise specified; and chronic pain. *Id*. Her mood was mostly stable. *Id*. The ALJ noted that she was having difficulty falling asleep in September 2006. *Id*. In December 2006, there was not current depression or current psychosis and her mood was more stable. *Id*.

The ALJ noted that in February 2007, Plaintiff's psychiatric progress note stated that she had no psychosis. Tr. at 15. She had suicidal ideas over the holidays but none currently. *Id*. She had hallucinations, but none currently. *Id*.

The ALJ addressed an evaluation by Herschel Pickholtz, who diagnosed Plaintiff with bipolar

affective disorder with ongoing mood cycling relative to anxiety, manic activity, racing thoughts, occasional depression, and agitation and anger which continued without any psychotic processing, mild to moderate in terms of severity. Tr. at 15. Plaintiff stated that she had mood swings and irritability, with difficulties in terms of obsessive and compulsive thoughts. *Id*. She washed her hands frequently and often was sitting down checking her doors and windows. *Id*. The ALJ noted that she reported visits with her sister, watches television, does household chores, goes to the movies, goes out to eat, plays cards, and visits with her father. *Id*. Her mood was described as stable and she was sleeping fine. *Id*.

The ALJ then described Plaintiff's hearing testimony related to her mental impairments. Tr. at 15. He noted that she claimed to experience depression, anxiety, manic episodes, and obsessive compulsive behavior. *Id*. at 15-16. She takes medications, which reportedly give some relief but wear off after a few hours. *Id*. at 16. Plaintiff reported drowsiness with difficulty concentrating and memory problems. *Id*.

The ALJ noted that Plaintiff was able to concentrate adequately while performing her bartending job and she was able to deal with customers. Tr. at 16. He noted that she had a similar experience at her sales job. *Id*.

Plaintiff contends that she meets multiple listings due to her mental impairments. ECF Dkt. #13 at 3-14. As Defendant notes, Plaintiff must demonstrate evidence of a mental disorder's objective signs, as found in Part A of Listings 12.04, 12.06, and 12.08, which result in at least two of the following:

    1. Marked restriction of activities of daily living; or

    2. Marked difficulties in maintaining social functioning; or

    3. Marked difficulties in maintaining concentration, persistence, or pace; or

    4. Repeated episodes of decompensation, each of extended duration;

Listing 12.04, 12.06, 12.08. Plaintiff can also meet Listings 12.04 or 12.06 by satisfying the "C criteria" alone.

As Defendant notes, the ALJ found that Plaintiff had severe impairments and went on to evaluate the "B criteria." Tr. at 13-14. Specifically, the ALJ found that Plaintiff suffered from

-6-

bipolar disorder, which invokes Listing 12.04(A)(3) and anxiety disorder, which invokes Listing 12.06.  *See* Tr. at 13.  Thus, Plaintiff's contentions that she meets various subsections of Part A does not advance her case.  The determinative question in Plaintiff's case rests on whether she meets the other requirements of the Listings.

Again, Plaintiff focuses her argument on attempting to establish how the evidence shows that she satisfies the B criteria.  She does not attempt to show error in the ALJ's analysis.  In any event, the ALJ considered the evidence of record, discussed above, and determined that she had mild restrictions in activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration persistence, or pace; and 1-2 episodes of decompensation, each of extended duration.  Tr. at 14.

Plaintiff contends that she "meets Listing 12.04(B)(2)," which relates to restrictions in social functioning.  ECF Dkt. #15 at 12-13.  Plaintiff reasons that she indicated that she could not get along with her bosses and co-workers, she had left several jobs, participated in no clubs or hobbies, and must take medication prior to going out of the house.  *Id*.  She also contends that she feels panicky around others and her social contact consists of her family and one friend.  *Id*.

The ALJ found moderate limitations in Plaintiff's ability to maintain social functioning.  Tr. at 14.  The ALJ noted that State Agency physician Alice Chambly opined that Plaintiff had only mild difficulties in maintaining social functioning.  Tr. at 16 citing Tr. at 294.  As the ALJ noted, she worked at Cottage Grove Gardens and as a bartender, where she interacted with the public during the alleged period of disability.  Tr. at 16, 27-32.  The ALJ acknowledged that Plaintiff claimed to have problems with her employers, but he also noted that she was able to deal with customers.  *Id*. at 16.  Even if Plaintiff is correct that substantial evidence supports a finding of disability, she has done nothing to question the ALJ's findings with regard to her deficits in social functioning.  The Court sees no reason to question them as they are articulate and supported by evidence of record.

Plaintiff also contends that she "meets Listing 12.04(B)(1)".  ECF Dkt. #15 at 13.  She contends that her bipolar disorder and depression make it difficult to complete daily tasks such as housework.  *Id*.  She contends that she does not care for her hair, shave her legs, or care how she looks.  *Id*.  She contends that she finds cleaning her house hard and it takes two hours or more to do

minimal housework, she can no longer cook healthy meals and only eats once or twice a day and only eats frozen meals. *Id*. She contends that she cannot handle money and cannot cope with stress and anxiety of doing so and she needs constant reminders for daily activities so that she does not forget anything. *Id*.

Again, Plaintiff points to no error in the ALJ's analysis. The ALJ found that Plaintiff had mild restrictions in activities of daily living. Tr. at 14. The ALJ noted that Plaintiff reported to Dr. Pickholtz that she visits with her sister, does household chores, goes to movies, goes out to eat, plays cards, and visits with her father. Tr. at 15. The ALJ further noted that Plaintiff spends about one hour a day using the internet and e-mailing others, she did yard work until recently (before the hearing), she takes care of cats, reads at times, goes to stores, visits with family and a friend. *Id*. at 16. The ALJ further noted that Dr. Chambly found only mild restrictions in activities of daily living. *Id*. at 16 citing Tr. at 294. Again, the Court finds that the ALJ's finding is supported by substantial evidence.

Plaintiff contends that she meets part B of Listings 12.04, 12.06, and 12.08 part C of Listing 12.04 due to her repeated episodes of decompensation. ECF Dkt. #15 at 13. Plaintiff contends that she has a medically documented history of depression with a duration of nearly seven years, and her medical records note that she was seen for depression in 2004. *Id*. at 13-14. She contends that her doctors have repeatedly diagnosed her with bipolar disorder and major depression, even going so far as saying she is "chronically **moderately** ill". *Id*. (emphasis modified). Plaintiff contends that she suffers from manic period once every two months that last five to seven days. *Id*. (citing hearing testimony, Tr. at 47).

The ALJ found that Plaintiff had one to two episodes of decompensation, each of extended duration. Listing 12.00C.4 sets forth the requirements for episodes of decompensation of extended duration:

> Episodes of decompensation are exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace. Episodes of decompensation may be demonstrated by an exacerbation in symptoms or signs that would ordinarily require increased treatment or a less stressful situation (or a combination of the two). Episodes of decompensation may be inferred from medical records showing significant alteration

-8-

> in medication; or documentation of the need for a more structured psychological support system (e.g., hospitalizations, placement in a halfway house, or a highly structured and directing household); or other relevant information in the record about the existence, severity, and duration of the episode.
>
> The term repeated episodes of decompensation, each of extended duration in these listings means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks.

Listing 12.00C.4. Plaintiff has not met the burden set forth in this listing. Rather, Plaintiff has merely pointed to diagnoses of record with no mention of an "exacerbation in symptoms or signs that would ordinarily require increased treatment or a less stressful situation." Accordingly, the Court sees no reason to question the ALJ's judgment regarding the number of Plaintiff's episodes of decompensation. Notably, Dr. Chambly opined that Plaintiff had no episodes of decompensation of extended duration. Tr. at 294; *see Morris v. Barnhart,* 223 Fed.Appx. 465, 469 (6th Cir. 2007), unreported (increases in medication and increased visits by social workers were insufficient to demonstrate episodes of decompensation where an ALJ's finding was supported by two state agency psychologists who opined that the claimant had not episodes of decompensation).

Plaintiff also contends that she meets Listing 12.04(C)(3). ECF Dkt. #15 at 14. She reasons that Dr. Picknoltz opined that Plaintiff had a "tendency to 'fall apart under demands, expectations and pressure.' " *Id.* quoting. Tr. at 278. Plaintiff has taken the record out of context. Dr. Pickholtz opined that her limitations fell in the mild to moderate range: "Her overall abilities to relate to co-workers and others, based upon current presentation, seemed to fall within the **mild to moderate ranges of impairment** as a result of her tendencies to fall apart under demands, expectations and pressure." Tr. at 278 (emphasis added). Plaintiff also points to a Functional Capacity Assessment from Dr. Chambly stating that Plaintiff had moderate impairments in the ability to handle stress. ECF Dkt. #15 at 15 citing Tr. at 282. This does nothing to establish that she is unable to function outside of a highly supportive living arrangement. Therefore, it does not advance her argument that she meets listing 12.04(C)(3).

Listing 12.04(C)(3) requires a showing of a "[c]urrent history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement." Listing 12.04(C)(3). The term "highly supportive living arrangement" refers

to shelters or group homes, inpatient psychiatric treatment, or an inability to live on one's own. *Gonsalves v. Astrue*, Civil No. 09-181-BW, 2010 WL 1935753, (D.Me.,May 10, 2010), *report and recommendation adopted by*, *Gonsalves v. Astrue*, Civil No. 09-181-B-W) 2010 WL 2540945 (D.Me. June 16, 2010), slip op. On the evidence before the Court there is simply no indication that Plaintiff requires a highly supportive living arrangement. Plaintiff does not contend that she is unable to live in her own home and there is no suggestion of that fact in the record. This argument is without merit.

For the foregoing reasons, the Court finds that the ALJ's analysis of Plaintiff's impairments under the Listings was supported by substantial evidence.

> **B.** **Whether the ALJ erred in assessing Plaintiff's RFC**

Plaintiff notes that the ALJ limited her to the full range of light work except that she is limited to occasional climbing, no ladders, ropes, or scaffolds, and only occasional stooping and balancing. ECF Dkt. #15 at 18. Plaintiff contends that the ALJ posed hypothetical questions to vocational expert and the vocational expert found that jobs existed for Plaintiff[2] at the above-referenced RFC.

Plaintiff contends that "If the requirements included a sit/stand option during the workday at 30 minute intervals the number of jobs available were reduced into a sedentary category with less jobs." ECF Dkt. #15 at 18. Plaintiff contends that the ALJ had a burden of providing evidence that demonstrates that work exists in significant numbers in the national economy that Plaintiff could do with that restriction. *Id.* In that regard, her brief states:

> The testimony and medical evidence demonstrates that Michele suffers from degenerative disc disease. This condition causes Michele to have symptoms of pain and impairs her ability to sit, stand, or walk for extended periods of time. Michele was diagnosed with degenerative disc disease by Dr. Sheri Salama and Dr. Ravi Krishnan.

ECF Dkt. #15 at 18. Plaintiff relies almost wholly on her diagnosis, but Plaintiff must show that the disorder results in significant work-related limitations. *See Foster v. Bowen*, 853 F.2d 483, 489 (6th Cir. 1988) (". . .in order to qualify for the receipt of benefits for the period of time preceding

---

[2] Although Plaintiff construes the record in this manner, the ALJ posed *hypothetical* questions to the vocational expert, not questions discussing whether Plaintiff herself could work. *See* Tr. at 65-71.

September 4, 1985, plaintiff must show that she was *disabled* by her dysthymic disorder.") (emphasis in original). To that end, Plaintiff points to an opinion with an illegible signature, which was purportedly authored by Dr. Ravi Krishnan. ECF Dkt. #15 at 19. However, Defendant challenges the identity of the medical source who authored that opinion, and the Court notes that the signature is clearly different than the one appearing on Dr. Krishnan's letter at page 341 of the transcript. *Compare* Tr. at 388 *with* Tr. at 341. The Court also notes that it appears that this work ability form has been modified. It appears that the form was completed and signed by one person, but it also appears that someone has printed over the handwriting of the original author. *See* Tr. at 387-88. If this is true, it could raise questions as to the accuracy of the information contained on the form.

The author's identity is also unknown because the opinion to which Plaintiff direct the Court does not state treatment dates or attach treatment notes. Of note, Plaintiff's counsel's fax number and heading appear at the top of the form. Accordingly, Plaintiff's counsel should have taken measures to ensure that the ALJ knew the identity of the medical source.

Despite Plaintiff's counsel's failure to identify the record when transmitting it to the to SSA, the ALJ had a duty under the Regulations to determine the identity of the medical source. *See* 20 C.F.R. §§ 404.1512(e)(1), 404.1519a(b)(4), 416.919a(b)(4) (if "a conflict, inconsistency, ambiguity or insufficiency in the evidence [which] must be resolved," the SSA will resolve it by recontacting the medical source). "The plain text of the regulations themselves make clear that a medical source must be recontacted only if the evidence from that source is 'inadequate.' " *Daniels v. Astrue*, Civil No. 09-21-GFVT, 2010 WL 599634 at *6 (E.D.Ky., Feb. 17, 2010), slip op. The Regulations provide that the SSA "**will** seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, [or] the report does not contain all the necessary information,. . ." 20 C.F.R. § 404.1512(e)(1). Here, the identity of the physician who offered the opinion is unknown. Therefore, an ambiguity exists that must be resolved. Additionally, the report does not contain all the necessary information for the ALJ to determine disability because it is missing the physician's name. It is unclear whether a treating physician, whose opinion may be entitled to controlling weight, authored this opinion. The outcome of that inquiry could impact the determination of Plaintiff's disability.

In *Mansour v. Astrue*, 2009 WL 272865, at *7, n. 17 (C.D.Cal.,Feb. 02, 2009), a district court noted that a conclusory opinion contained an illegible signature and the court, remanding the case for other reasons, suggested that the ALJ ascertain the identity of the medical source. Here, the opinion was not conclusory in nature, and the Court has no way of determining if the opinion was authored by a treating source. Further, the ALJ made no mention of the opinion in his decision.

In regard to harmless error, the Sixth Circuit has stated:

> While agency decisions must be sustained, if at all, on their own reasoning, ... this principle "does not mechanically compel reversal 'when a mistake of the administrative body is one that clearly had no bearing on the procedure used or the substance of [the] decision reached.' " Where a subsidiary finding is unfounded, the court will remand the case to the agency for further consideration only if "the court is in substantial doubt whether the administrative agency would have made the same ultimate finding with the erroneous finding removed from the picture...."

*Berryhill v. Shalala*, No. 92-5876, 1993 WL 361792 at *7 (6th Cir.1993).

In this case, Plaintiff contends that a sit/stand option was appropriate based upon the medical opinion contained at pages 387-388 of the transcript, and the vocational expert opined that jobs existed in the economy that would accommodate a sit/stand option. ECF Dkt. #15 at 19. The vocational expert stated that a sit/stand option would reduce the number of available jobs, but would leave 400 jobs in northeast Ohio and 70,000 jobs nationally as a bench assembler, and 500 jobs in northeast Ohio and 70,000 jobs nationally as a wire assembler. Tr. at 69-70. He opined that the number of jobs for final assembler would remain the same at 800 jobs in northeast Ohio and 120,000 jobs nationally. *Id*. The vocational expert stated that these statistics were not provided for in the *Dictionary of Occupational Titles* ("DOT"). *Id*. at 70. Rather, the vocational expert testified that the "information has to come from my own experience." *Id*.

The Court acknowledges that vocational experts are qualified to offer opinions on vocational matters. For example, a vocational expert "can assess the effect of any limitation on the range of work at issue (e.g., the potential occupational base); advise whether the impaired person's RFC permits him or her to perform substantial numbers of occupations within the range of work at issue; identify jobs which are within the RFC, if they exist; and provide a statement of the incidence of such jobs in the region in which the person lives or in several regions of the country." SSR 83-12 at *3. Although a vocational expert should be consulted to clarify the implications for the

occupational base when there is an unusual limitation on the ability to sit and stand (SSR 83-12 at *4), this type of consultation refers to occupational restrictions resulting from a sit/stand impairment. *See Id*. at *4 ("Such an individual is not functionally capable of doing either the prolonged sitting contemplated in the definition of sedentary work . . . or the prolonged standing or walking contemplated for most light work."). In other words, one type of question the ALJ could ask a vocational expert is whether a requirement for a sit/stand option could have an impact on the ability to perform a certain job. That is, in part, what the vocational expert did in this case, when he stated that a bench assembler, wire assembler, and final assembler job would still be appropriate with a sit/stand option.

What Plaintiff takes issue with are the number of jobs available once a sit/stand option is in place. ECF Dkt. #15 at 18 (""Mr. Macy indicated that such a sit/stand option was not covered in the Dictionary of Occupational Titles."). "In making disability determinations, [the SSA relies] primarily on the DOT. . . for information about the requirements of work in the national economy." SSR 00-4P at *2. "Neither the DOT nor the VE or VS evidence automatically 'trumps' when there is a conflict." *Id*. "When there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency." *Id*.

Here, the vocational expert testified that no inconsistency existed with the DOT and "that information has to come from [his] own experience." Tr. at 70. The Seventh Circuit has held that "[a] vocational expert is 'free to give a bottom line' [when testifying before an ALJ,] but the data and reasoning underlying that bottom line must be 'available on demand' if the claimant challenges the foundation of the vocational expert's opinions." *McKinnie v. Barnhart*, 368 F.3d 907, 911 (7th Cir. 2004) quoting *Donahue v. Barnhart*, 279 F.3d 441, 446 (7th Cir.2002). In those instances, "[i]f the basis of the vocational expert's conclusions is questioned at the hearing ... then the ALJ should make an inquiry ... to find out whether the purported expert's conclusions are reliable." *Id*.

Here, Plaintiff had an opportunity to challenge the basis of the vocational expert's

-13-

qualifications and the basis of his opinion, but she never did. If this Circuit were to apply the rule of law from *McKinnie,* then Plaintiff's argument would certainly be considered waived for failure to inquire with the expert at the administrative hearing. The Sixth Circuit has clearly held that a claimant "cannot . . . contest the general qualifications of the VE after expressly conceding the qualifications in the hearing before the ALJ. Counsel also cannot complain of the failure of the VE to supply specific statistical evidence in the absence of an express request by counsel for those statistics." *Yopp-Barber v. Commissioner of Social Sec.*, 56 Fed.Appx. 688, 689-90 (6th Cir. Jan. 27, 2003), unreported. Further, "nothing in the applicable Social Security regulations requires the administrative law judge to conduct his or her own investigation into the testimony of a vocational expert to determine its accuracy, especially when the claimant fails to bring any conflict to the attention of the administrative law judge." *Ledford v. Astrue*, 311 F. App'x 746, 757 (6th Cir.2008); *see also Ragsdale v. Shalala*, 53 F.3d 816, 819 (7th Cir. 1995) (failure to challenge basis of vocational expert's testimony at administrative hearing constitutes waiver of the issue in the district court).

In this case, Plaintiff's counsel expressly stated that he had no objections to the vocational expert's qualifications, and he raised no issue pertaining to the basis for the vocational expert's opinion being beyond the scope of the DOT. *See* Tr. at 66, 70-71. Further, the vocational expert here opined that the number of jobs for a final assembler position would be unaffected by a sit/stand limitation. Tr. at 69-70. Since the vocational expert believed that the number of positions for the final assembler position would be unaffected by a sit/stand option, then the vocational expert must have appropriately determined that a sit/stand option would not restrict an employee in performing the duties of a final assembler. *See* SSR 83-12 at *4.

At 800 jobs locally and 120,000 jobs nationally for a final assembler, the number of jobs identified by the vocational expert are "significant" for social security purposes. *See Girt v. Astrue* No. 5:09-cv-1218, 2010 WL 908663 at *4 (N.D.Ohio, Mar. 12, 2010) (collecting cases).

While the ALJ may have erred in regard to failing to consider a medical opinion, that error does not require remand on Plaintiff's assertion that the opinion required a sit/stand option. Even if a sit/stand option were in place, the vocational expert's testimony upon which the ALJ relied

-14-

shows that jobs exist in the national economy that a person with Plaintiff's limitations and a sit/stand option can perform.

Plaintiff also contends that the ALJ erroneously found that she could perform light work but not sedentary work. Tr. at 20. The Court does not see a finding in the ALJ's decision that Plaintiff was unable to perform sedentary work. Accordingly, the Court finds that this argument is without merit.

For the foregoing reasons, the Court finds that the ALJ's decision related to Plaintiff's RFC was supported by substantial evidence.

### C. Whether the ALJ erred in assessing Plaintiff's credibility

Plaintiff contends that the ALJ improperly assessed her credibility. ECF Dkt. #13 at 20-22. Plaintiff reasons that the ALJ did not fully address the side effects of her medication. *Id*. at 21. She contends that she is in constant pain every day, all day long. *Id*. And, she contends that the ALJ erred in considering her unsuccessful work attempts. *Id*. Plaintiff concludes that substantial evidence supports the credibility of her allegations as to her pain level, intensity, and duration. *Id*. at 22.

The social security regulations establish a two-step process for evaluating pain. *See* 20 C.F.R. § 416.929, SSR 96-7p. In order for pain or other subjective complaints to be considered disabling, there must be (1) objective medical evidence of an underlying medical condition, and (2) objective medical evidence that confirms the severity of the alleged disabling pain arising from that condition, or objectively, the medical condition is of such severity that it can reasonably be expected to produce such disabling pain. *See id.; Stanley v. Secretary of Health and Human Services*, 39 F.3d 115, 117 (6th Cir. 1994); *Felisky v. Bowen*, 35 F.3d 1027, 1038-1039 (6th Cir. 1994); *Duncan v. Secretary of Health and Human Services*, 801 F.2d 847, 853 (6th Cir. 1986). Therefore, the ALJ must first consider whether an underlying medically determinable physical or mental impairment exists that could reasonably be expected to produce the individual's pain or other symptoms. *See id.* Secondly, after an underlying physical or mental impairment is found to exist that could reasonably be expected to produce the claimant's pain or symptoms, the ALJ then determines the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which the

symptoms limit the claimant's ability to do basic work activities. *See id.*

When a disability determination that would be fully favorable to the plaintiff cannot be made solely on the basis of the objective medical evidence, an ALJ must analyze the credibility of the plaintiff, considering the plaintiff's statements about pain or other symptoms with the rest of the relevant evidence in the record and factors outlined in Social Security Ruling 96-7p. *See* SSR 96-7p, 61 Fed. Reg. 34483, 34484-34485 (1990). These factors include: the claimant's daily activities; the location, duration, frequency and intensity of the pain; precipitating and aggravating factors; the type, dosage, effectiveness and side effects of any pain medication; any treatment, other than medication, that the claimant receives or has received to relieve the pain; and the opinions and statements of the claimant's doctors. *Felisky*, 35 F.3d at 1039-40. Since the ALJ has the opportunity to observe the claimant in person, a court reviewing the ALJ's conclusion about the claimant's credibility should accord great deference to that determination. *See Casey*, 987 F.2d at 1234. Nevertheless, an ALJ's assessment of a claimant's credibility must be supported by substantial evidence. *Walters v. Commissioner of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997).

Again, Plaintiff applies the incorrect standard of review by contending that substantial evidence supports her credibility. ECF Dkt. #15 at 22. Nevertheless, the ALJ did take into account Plaintiff's allegation that her medications make her drowsy, cause difficulty concentrating, and cause some memory problems. Tr. at 16. He also acknowledged her report of hallucinations in 2007. *Id.* at 15. Plaintiff asserts that the ALJ did not consider the side effects of her medicine, and she lists these same side effects. ECF Dkt. #15 at 20-21. The Court sees no merit to her argument because the ALJ did consider the side effects, which is just one factor that the ALJ must consider along with other evidence contained in the record as a whole. *See* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

As for Plaintiff's assertions of pain and work attempts, the ALJ stated that there was little objective evidence in support of her use of a cane, and she was able to handle the physical demands of bartending. Tr. at 16. Plaintiff notes that the ALJ failed to acknowledge her testimony that she remained in bed for two days after a shift as a result of the pain. ECF Dkt. #15 at 22 citing Tr. at 58. However, Plaintiff testified that she would work from 6:00 p.m. until 3:00 a.m. and be on her feet for "a long time" and never taking a break. Tr. at 35. The ALJ's determination that Plaintiff could

perform a more limited RFC of light work, with restrictions, is consistent with this testimony.[3] Further, Plaintiff quit the job, not due to the physical demand, but because she had a disagreement with the employer. Tr. at 36.

For the foregoing reasons, Plaintiff's contention that the ALJ erred in assessing her credibility is not well-taken.

### D. Whether the ALJ erred in assessing Plaintiff's complaints of pain

Plaintiff contends that the ALJ erred in assessing her complaints of pain. ECF Dkt. #15 at 22. Plaintiff's sole complaint in this regard is that the ALJ cited a report that Plaintiff was active in September of 2007 playing tennis and walking. ECF Dkt. #15 at 22 citing Tr. at 16. Plaintiff contends that she later admitted this statement was a fabrication to her therapist due to her embarrassment over her inactivity. *Id*. citing Tr. at 53. Plaintiff did testify to this effect in the record. However, as noted above, the ALJ's assessment of her credibility should be accorded great deference. After hearing Plaintiff testify at the hearing, the ALJ noted and considered her statement, but he was apparently not persuaded. Tr. at 16. The Court has no reason to second-guess that determination because the ALJ had the best opportunity to assess her credibility and did consider the statement that Plaintiff puts at issue. Plaintiff has not pointed to any evidence in the record to support the assertion that her statement to her therapist was a fabrication. Additionally, the ALJ's assessment of Plaintiff's credibility was otherwise supported by substantial evidence. The ALJ noted that the objective medical findings showed only minimal bulging and early degenerative changes. *Id*. The ALJ also considered her other activities of daily living and found them to be inconsistent with her claims of disabling pain, as noted above. Accordingly, Plaintiff's argument related to the ALJ's assessment of her pain is without merit.

### E. Whether the ALJ erred in considering opinions from treating sources

Lastly, Plaintiff contends that the ALJ failed to properly consider an opinion from Mary

---

[3] In the context of sedentary work, an individual is expected to remain seated for a total of 6 hours, with normal breaks at two hour intervals, one in the morning, one at lunch, and one in the afternoon. *See* SSR 96-9p. Another Social Security Ruling compared the prolonged sitting requirements of sedentary work to the prolonged standing requirements of light work. *See* SSR 83-12 at *4.

-17-

Lieder, ARNP.  ECF Dkt. #15 at 23.  Plaintiff contends that the ALJ incorrectly discounted her opinion on the basis of her not being an acceptable medical source.  *Id*.

An ALJ must adhere to certain standards when reviewing medical evidence in support of a claim for social security.  Most importantly, the ALJ must generally give greater deference to the opinions of the claimant's treating physicians than to those of non-treating physicians.  SSR 96-2p, 1996 WL 374188 (July 2, 1996); *Wilson*, 378 F.3d at 544. A presumption exists that the opinion of a treating physician is entitled to great deference.  *Id.*; *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 (6th Cir. 2007).  Accordingly, if that presumption is not rebutted, the ALJ must afford controlling weight to the opinion of the treating physician if that opinion regarding the nature and severity of a claimant's conditions is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record." *Wilson,* 378 F.3d at 544. "The determination of disability is [ultimately] the prerogative of the [Commissioner], not the treating physician." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) quoting *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir.1985).  When an ALJ determines that a treating physician's opinion is not entitled to controlling weight, he must consider the following factors in determining the weight to give to that opinion:  the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors. *Id.*

If an ALJ decides to discount or reject a treating physician's opinion, he must provide "good reasons" for doing so.  SSR 96-2p.  The ALJ must provide reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.*  This allows a claimant to understand how her case is determined, especially when she knows that her treating physician has deemed her disabled and she may therefore " 'be bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied.' " *Wilson,* 378 F.3d at 544 quoting *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir.1999).  Further, it "ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule." *Id.*  If an ALJ fails to explain why he rejected or discounted the opinions and how those reasons affected

-18-

the weight accorded the opinions, this Court must find that substantial evidence is lacking, "even where the conclusion of the ALJ may be justified based upon the record." *Rogers,* 486 F.3d at 243, citing *Wilson*, 378 F.3d at 544.

Plaintiff contends that "The ALJ's rejection of Mary Lieder's opinion as to the claimant's ability to sustain meaningful employment solely on the basis of her not qualifying as an acceptable medical source does not take into consideration the fact that Mary Lieder meets with Michele on a weekly or bi-weekly basis." ECF Dkt. #15 at 24. Plaintiff does not cite to the specific opinion that the ALJ allegedly improperly discredited. *See* ECF Dkt. #15 at 23-25. Based on Defendant's brief and an independent review of the record, the Court has discovered opinions from Nurse Lieder located at pages 400 and 500-501 of the transcript. However, these opinions generally invade the province of the ALJ, who is charged with making the ultimate determination of disability. Nurse Lieder opines that Plaintiff is "unable to obtain and sustain meaningful employment" and that she is "unemployable." Tr. at 400, 500-01.

"When a treating physician . . . submits an opinion on an issue reserved to the Commissioner-such as whether the claimant is 'disabled' or 'unable to work'-the opinion is not entitled to any particular weight." *Turner v. Commissioner Of Social Security*, No. 09-5543, 2010 WL 2294531 at *4, (6th Cir. June 7, 2010), unreported; *see also* 20C.F.R. §416.927(e)(1). "Although the ALJ may not entirely ignore such an opinion, his decision need only explain the consideration given to the treating source's opinion." *Id*. (internal quotation and citation omitted). In *Turner*, a treating source opined that the claimant was unable to work" and was not "currently capable of a full-time 8-hour workload." *Id*. at *5. The Sixth Circuit held that the ALJ adequately addressed the opinion in stating that it was an opinion on an issue reserved to the Commissioner. *Id*. In this case, the ALJ stated that Nurse Lieder's opinion was inconsistent with the record because Nurse Lieder opined that Plaintiff could not work an 8-hour job, but Plaintiff did work an 8-hour job in 2008. Tr. at 16; *see also* Tr. at 500-501.

The extent of Plaintiff's argument only touches on Nurse Lieder's opinion on the issue of employability. Therefore, any claim Plaintiff may have related to the balance of Nurse Lieder's opinion is technically waived. *See Heston v. Commissioner of Social Sec.*, 245 F.3d 528, 534-35

(6th Cir. 2001) (arguments not raised in the district court are deemed to be waived). In any event, the ALJ stated that Nurse Lieder's opinion was inconsistent with the objective evidence of record demonstrating that Plaintiff did have the ability to work while Nurse Lieder believed that she could not. Tr. at 16. Accordingly, the ALJ gave her entire opinion less weight. *Id*. The Court finds no error in this analysis.

Plaintiff also contends that the ALJ "disputes that Michele's recurrent major depression, bipolar disorder, personality disorder and degenerative disc disease meet the requirements of a listed impairment." ECF Dkt. #15 at 25. Again, Plaintiff does not cite the pertinent portions of the record. ECF Dkt. #15 at 25. As noted above, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease; fibromyalgia; bipolar disorder; and anxiety disorder. Tr. at 13. Therefore, diagnosis of the disorder was not the issue. The issue was whether Plaintiff suffered limiting effects of the impairments, which the respective listings embody as additional criteria. Plaintiff does not point to an opinion from a physician showing the she meets *all* of the criteria necessary to meet a given listing. The ALJ already considered Listings 12.04, 12.06, and 12.08. Considering additional diagnoses of depression, bipolar disorder, or personality would not have advanced Plaintiff's case because the ALJ appropriately found that the B and C criteria were not satisfied. Establishing additional diagnoses would have only satisfied additional A criteria, without satisfying these listings. With respect to Listing 1.04, the Court reiterates that Plaintiff has pointed to no evidence of a compromise of the nerve root or spinal cord. Thus, remand for this purported error is unnecessary. *See Berryhill*, 1993 WL 361792 at *7.

## VI. CONCLUSION

For the foregoing reasons, the Court AFFIRMS the Commissioner's decision and DISMISSES the instant case in its entirety with prejudice.

DATE: August 19, 2010

*/s/George J. Limbert*
GEORGE J. LIMBERT
UNITED STATES MAGISTRATE JUDGE